UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES STEIN, et al., | No. CV-05-264-FVS |
| Plaintiffs, | |
| v. | ORDER GRANTING SUMMARY JUDGMENT |
| TONY ROUSSEAU, et al., | |
| Defendants. | |

**THIS MATTER** came before the Court for consideration of a number of motions. The plaintiffs were represented by Steven Schneider; the defendants by Angel D. Rains and Thomas T. Bassett. This order serves to memorialize the Court's oral ruling.

**BACKGROUND**

Tony Rousseau and Becky Rousseau own Hotwire Direct. During the Fall of 2004 and the Winter of 2005, Mr. Rousseau considered hiring James Stein as a salesman or general manager. Mr. Stein arrived at Hotwire's plant in Clarkston, Washington, on March 28, 2005. He alleges that, by then, Mr. Rousseau had hired him as Hotwire's general manager. Mr. Rousseau denies offering him a job as of that date. Instead, Mr. Rousseau insists he was still considering Mr. Stein's suitability for employment. Mr. Rousseau maintains he invited Mr. Stein to visit Clarkston in order to better evaluate him. Although the record is unclear, it appears Mr. Stein discussed the firm's overtime-compensation policy with the bookkeeper during his first few days in Clarkston. He concluded that Hotwire's then-

ORDER - 1

existing policy violated the Fair Labor Standards Act.  He expressed his concerns to Mr. Rousseau.  On March 30th, he flew to Florida with Mr. Rousseau's son, Ben, to attend a trade show and visit Hotwire's representatives and customers.  When they returned, Tony Rousseau hired Mr. Stein as general manager.  By then, Mr. Rousseau had instituted a new overtime-compensation policy.  Mr. Stein was satisfied with the new policy.  (Deposition of James Stein, at 85, 87.)  Steve Jentsch was one of Mr. Stein's fellow employees.  He was responsible for publication of the new policy.  On April 14th, he asked Mr. Stein, "[W]hat happens when the employees come in and say what happened to our [former] program?" *Id.* at 88.  Mr. Stein recalls saying, "[I]ts pretty much a don't-ask-don't tell law.  Point them towards Tony, . . . its Tony's past program, its not mine[.]" *Id.*  Both Ben Rousseau and Tony Rousseau overheard Mr. Stein's comments.  This prompted a discussion of the legality of the former program.  Mr. Stein recalls saying:

> I think we've got a big problem here.  I said, Ben, you might want to call Region 10 over in Seattle and just confirm what's on these [pages Mr. Stein had printed], this is current information, and he said no, you call them.  So I picked up the phone and called Information and got Region 10's Seattle number and called them.  Never did get though to them.

*Id.* at 88-9.  Tony Rousseau interrupted and told Mr. Stein to "get off the phone." *Id.* at 89.  The discussion became increasingly heated.  Tony Rousseau yelled, "[P]ut down the damn phone, we're going to take you behind the building and shoot you." *Id.* at 91.  He allegedly repeated the statement twice more.  "[The] third time he said listen, I am not kidding, if they come in here and it costs me tens of thousands of dollars, we will take you out behind the building and shoot you." *Id.* at 92.  Eventually, the argument ended

ORDER - 2

and the men turned to other things. *Id.* at 94. The next day, Tony Rousseau fired Mr. Stein. This action followed. James Stein and Carol Stein allege Mr. Rousseau committed violations of the Fair Labor Standards Act ("FLSA") and the Washington Minimum Wage Act ("WMWA"). Furthermore, they allege Mr. Rousseau's decision to fire Mr. Stein constitutes the tort of wrongful termination in violation of public policy. The Steins seek damages, fees, and costs from the Rousseaus. The Steins allege the Court has original jurisdiction over their FLSA claims. 28 U.S.C. § 1331. The assert jurisdiction on no other basis. The Court may exercise supplemental jurisdiction over their state-law claims. 28 U.S.C. § 1367.

**FAIR LABOR STANDARDS ACT**

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to [the Act.]" 29 U.S.C. § 215(a)(3). The threshold issue is whether a general manager's statements to the owner of the company concerning the company's potential liability for overtime constitute a "complaint" within the meaning of § 215(a)(3) where, as here, the general manager is not seeking compensation for himself or any other employee in the company.

The FLSA is construed broadly because it is a remedial statute. *Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir.1999) (*en banc*) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944))), *cert. denied*, 528 U.S. 1116, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000). The key to interpreting § 215(a)(3) "is the need to prevent employees' 'fear of economic retaliation' for voicing grievances about substandard conditions.'" *Id.* (quoting *Brock v. Richardson*, 812 F.2d 121, 124-25

ORDER - 3

(3d Cir.1987)).  In *Lambert*, the Ninth Circuit considered whether an employee who had informally asked her employer for compensation for overtime -- as opposed to, say, formally instituting an action in court -- had "filed a complaint" within the meaning of § 215(a)(3).  Although the Ninth Circuit agreed with the First Circuit that "'not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer,'" *id.* at 1007 (quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44 (1st Cir.1999)), the Ninth Circuit decided that the plaintiffs had filed a complaint within the meaning of § 215(a)(3):

> [They] not only complained orally to their employers [sic] about the failure to pay adequate overtime wages, and specifically alleged a violation of the FLSA, they also contacted the Department of Labor (which informed them that their employer's practices were illegal), hired an attorney to assist them with their claim, and notified their employer in writing of the specific FLSA violation they were alleging.

180 F.3d at 1007.  "[T]hese actions," said the Ninth Circuit, "unquestionably amount to the filing of a complaint[.]"  *Id.*  The Court did not stop there.  In dicta, it said, "[L]ess formal and detailed communications also fit the statutory definition."  *Id.*

　　While *Lambert* provides important guidance, its holding is readily distinguishable.  Mr. Stein did not assert his, or anyone else's, right to compensation for overtime.  He simply warned Tony Rousseau that Hotwire might face exposure to liability under the FLSA as a result of its former overtime-compensation policy.  Since the holding of *Lambert* is readily distinguishable, and since the parties have failed to cite any other relevant authorities from the Ninth Circuit, it is appropriate to determine whether other circuits have addressed the issue raised by the facts of this case.

ORDER - 4

Two decisions warrant close examination. One is *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir.1996). There, the personnel director told the president of the company that, in her opinion, the company was not complying with the FLSA's requirements concerning compensation for overtime. He fired her sixteen days later. *Id.* The Tenth Circuit ruled that "it is the assertion of statutory rights (*i.e.*, the *advocacy* of rights) by taking some action adverse to the company -- whether via formal complaint, providing testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise -- that is the hallmark of protected activity under § 215(a)(3)." *Id.* at 1486 (emphasis in original). The Tenth Circuit held that the personnel director's statements to the president concerning the company's alleged failure to pay overtime did not qualify as a complaint under that standard. *Id.* at 1487. Two facts were especially important to the Tenth Circuit. First, she "did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else." *Id.* at 1486. Second, her "actions in connection with the overtime pay issue were completely consistent with her duties as personnel director for the company to evaluate wage and hour issues and to assist the company in complying with its obligations under the FLSA." *Id.* at 1487. The other decision that warrants close examination is *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99 (1st Cir.2004), *cert. denied*, 543 U.S. 1120, 125 S.Ct. 1064, 160 L.Ed.2d 1067 (2005). There, an employee who was responsible for supervising security guards wrote a letter to his superiors advising them that, in his opinion, the guards were not being compensated properly for overtime. His superiors discussed the matter with him and took certain corrective actions. Having done so, they directed him to sign invoices that documented both the hours

ORDER - 5

which the guards worked and the pay which they were to receive.  When he refused to sign the invoices, his superiors fired him.  *Id.* at 101.  The First Circuit divided its FLSA analysis into two parts.  One part addressed his written and oral statements concerning potential FLSA violations.  The First Circuit agreed with the Tenth Circuit that "'it is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3).'"  *Id.* at 102 (quoting *McKenzie*, 94 F.3d at 1486).  The First Circuit held that the employee's written and oral statements to his superiors were not covered by § 215(a)(3) because he "'never crossed the line from being an employee merely performing h[is] job . . . to an employee lodging a personal complaint.'"  Id. at 103 (quoting *McKenzie*, 94 F.3d at 1486) (alterations in *Claudio-Gotay*).  He was concerned with protecting his employer from liability, not with asserting FLSA rights that were adverse to its interests.  375 F.3d at 102.  The other part of the First Circuit's analysis addressed the employee's refusal to sign the invoices that documented the hours which the guards worked and the pay which they were to receive.  The First Circuit held that the employee's disobedience was not protected because it did not advance interests which § 215(a)(3) was enacted to protect.  *Id.* at 103.  Of particular importance to the First Circuit was the fact that his "refusal to sign the invoices occurred after the whistle had been blown and after corrective actions were being taken to remedy any FLSA violations."  *Id.*

Mr. Stein questions whether the First and Tenth Circuits interpret the FLSA as broadly as the Ninth Circuit does.  In *Lambert*, the Court carefully reviewed cases from other circuits, including the First and the Tenth.  The Court recognized that both the First and

ORDER - 6

Tenth Circuits broadly interpret the FLSA. Nowhere in *Lambert* did the Court suggest that this circuit's interpretation of the FLSA is broader than the First and Tenth Circuits' interpretations. To the contrary, the Court agreed with its sister circuits concerning the proper interpretation of § 215(a)(3). *See, e.g., Lambert*, 180 F.3d at 1004, 1007, 1008 (quoting or citing *Valerio v. Putnam Assocs. Inc.*, *supra*). For example, as explained above, the Ninth Circuit joined the First in acknowledging, "'There is a point at which an employee's concerns and comments are too generalized and informal to constitute complaints that are filed with an employer within the meaning of the [statute].'" *Id.* at 1007 (quoting *Valerio*, 173 F.3d at 44) (internal punctuation and citation omitted). The fact that not all employee statements concerning overtime qualify as "complaints" within the meaning of § 215(a)(3) poses an important question: What is the standard for distinguishing protected from unprotected statements? To begin with, it is important to note that the Ninth Circuit has never held that anything less than a concrete request for compensation is protected. In that regard, the Ninth Circuit is like the Tenth. *McKenzie*, 94 F.3d at 1486 ("Despite our expansive interpretation of § 215(a)(3), we have never held that an employee is insulated from retaliation for participating in activities which are neither adverse to the company nor supportive of adverse rights under the statute which are asserted against the company."). It is also useful to consider the principle that strongly influenced the Ninth Circuit's interpretation of § 215(a)(3); namely, "the need to prevent employees' fear of economic retaliation for voicing grievances[.]" *Id.* at 1003. The reference to "grievances" is significant. It suggests that § 215(a)(3) protects only adverse conduct. This observation is reinforced by the

ORDER - 7

facts upon which *Lambert*'s holding rested. In that case, it was the employees' demand for compensation -- informal though it may have been -- that constituted the filing of a complaint and triggered the protections of § 215(a)(3). 180 F.3d at 1007-08. Even *Lambert*'s dicta supports the proposition that § 215(a)(3) protects only adverse conduct. "[S]o long as an employee communicates the *substance* of his allegations to the employer . . .," said the Ninth Circuit, "he is protected by § 215(a)(3)." 180 F.3d at 1008 (emphasis in original). In sum, it is likely the Ninth Circuit will follow the lead of the First and Tenth Circuits. For one thing, they interpret the FLSA as broadly as it does. For another thing, the Ninth Circuit has acknowledged that not all employee statements concerning overtime are covered by § 215(a)(3). Finally, the rule adopted by the First and Tenth Circuits for distinguishing protected from unprotected statements -- *i.e.*, that § 215(a)(3) is triggered only where an employee asserts statutory rights by taking some action adverse to his company -- is implicit in *Lambert*'s rationale, holding, and dicta.

"The FLSA was created to protect an employee who 'lodge[s] complaints or suppl[ies] information to officials regarding allegedly substandard employment practices and conditions.'" *Claudio-Gotay*, 375 F.3d at 103 (quoting *Valerio*, 173 F.3d at 42 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960))). Granting protection to Mr. Stein's statements about Hotwire's potential liability for overtime compensation will do little to advance the purpose for which the FLSA was created. Mr. Stein concedes Mr. Rousseau responded to his initial concerns about Hotwire's overtime-compensation policy by enacting a new one. Mr. Stein was satisfied with the new policy. As of April 14th, no

ORDER - 8

employee had complained to Mr. Stein about Hotwire's former policy. The heated argument did not occur because Mr. Stein asked Mr. Rousseau to grant an employee's request for compensation.  To the contrary, Mr. Stein was expressing an opinion, as general manager, concerning the company's potential liability under the FLSA.  He did not offer his opinion for the benefit of any specific employee. Rather, he offered it for the benefit of the company as a whole in his capacity as one of the company's managers.  His comment to Ben Rousseau is telling.  "*[W]e've* got a big problem here."  (Emphasis added.)  Looking at Mr. Stein's statements in the context in which he made them, it is clear that none his statements about Hotwire's former overtime-compensation policy was adverse to Hotwire's interests.  That being the case, none of the relevant statements is protected by § 215(a)(3).  His FLSA claims fail for want of participation in protected activity. *See Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir.1996) (In order to establish a violation of § 215(a)(3), Mr. Stein must prove the following:  that he participated in a statutorily protected activity; that Mr. Rousseau thereafter subjected him to an adverse employment action; and that Mr. Rousseau did so in reprisal for his having engaged in the protected activity.).

   **STATE-LAW CLAIMS**

   The parties have not discussed whether state law provides greater protection than the FLSA.  Consequently, the plaintiffs' state-law claims will be dismissed without prejudice.  28 U.S.C. § 1367(c)(3).  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988) ("'[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise

ORDER - 9

jurisdiction over the remaining state law-claims.'").

**IT IS HEREBY ORDERED:**

1. The plaintiffs' motion for partial summary judgment (**Ct. Rec. 50**) is denied.

2. The defendants' motion for summary judgment (**Ct. Rec. 57**) is granted in part: the plaintiffs' FLSA claims are dismissed **with** prejudice; their state-law claims are dismissed **without** prejudice.

3. The plaintiffs' motion to compel (**Ct. Rec. 62**) is denied.

4. The plaintiffs' motion for an extension (**Ct. Rec. 67**) is granted.

5. The plaintiffs' motion to expedite (**Ct. Rec. 68**) is denied as moot.

6. The plaintiffs' motion to strike (**Ct. Rec. 70**) is denied.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this order, enter judgment accordingly, and furnish copies to counsel.

**DATED** this ___8th___ day of August, 2006.

                    s/ Fred Van Sickle
                       Fred Van Sickle
               United States District Judge